IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

**FILED**

MAR 3 1 2021 DB

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

| | |
|---|---|
| ANDY L. ALLMAN<br>Petitioner | )<br>)<br>) Docket No.<br>) From the Tennessee Court of Criminal |
| vs. | ) Appeals No. M2021-00196-CCA-R8-CO<br>) Sumner County Criminal Court Cases:<br>) No. 2017-CR-548 |
| SONNY WEATHERFORD,<br>SHERIFF OF SUMNER<br>COUNTY, TN, and<br>HERBERT H. SLATERY, III,<br>TENNESSEE STATE<br>ATTORNEY GENERAL<br>Respondents | ) No. 2017-CR-875<br>) No. 2020-CR-133<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF FILING

Comes now the Petitioner and hereby gives notice of the filing in the United States District Court

Middle District of Tennessee, the transcripts of In-Court Proceedings of October 5, 2020 in the

Criminal Court for Sumner County, TN.

1

Respectfully submitted,

Andy L. Allman
Defendant
117 W. Smith Street
Gallatin, TN 37066

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Notice of Filing, has been served via U.S.

Mail on the 31st Day of March 2021 addressed to:

Sonny Weatherford
Sheriff of Sumner County, TN
117 West Smith St.
Gallatin, TN 37066

Herbert H. Slatery, III
Tennessee State Attorney General
P.O. Box 20207
Nashville, TN 37202-0207

Andy L. Allman

```
 1   IN THE CRIMINAL COURT FOR SUMNER COUNTY, TENNESSEE
                         AT GALLATIN
 2

 3

 4   STATE OF TENNESSEE          )
                                )
 5                              )
     vs.                        )   NO.  CR875-2017
 6                              )        CR548-2017
                                )
 7   ANDY LAMAR ALLMAN          )

 8
     _____
 9

10

11

                   TRANSCRIPT OF PROCEEDINGS
12
                    Monday, October 5, 2020
13

14

15

16
     _____
17

18
              THE HONORABLE DEE DAVID GAY PRESIDING
19

20

21

22

23
                      LORI C. BICE, LCR
24                  Criminal Justice Center
                     117 W. Smith Street
25              Gallatin, Tennessee 37066
                      (615) 414-8993
```

```
 1              A P P E A R A N C E S :

 2

 3    FOR THE STATE:

 4         Thomas Boone Dean
           Assistant District Attorney General
 5         Office of the District Attorney General
           113 West Main Street, Third Floor
 6         Gallatin, Tennessee 37066

 7         C. Ronald Blanton
           Assistant District Attorney General
 8         Office of the District Attorney General
           113 West Main Street, Third Floor
 9         Gallatin, Tennessee 37066

10

      FOR THE DEFENDANT:
11
           Gary D. Copas
12         Attorney at Law
           P.O. Box 190137
13         Nashville, Tennessee 37219

14    ---------------------------------------------------

15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

(The aforementioned cause came on to be heard on Monday, October 5, 2020, before the Honorable Dee David Gay, Judge, when the following proceedings were had, to wit:)

THE COURT: Let's get Mr. Allman out. All right. If we could take the cuffs off, please.

Okay. Let the record reflect that this is State of Tennessee vs. Andy Allman, Case No. 548-2017 and 875-2017. Before the Court today is a motion for hybrid representation and furloughs, and recently filed was a motion to withdraw.

The Court is a little concerned about, number one, the timing here. We've got eight weeks until we go through this trial with much -- with many witnesses, a lot of documentation, and so forth, and as I told Mr. Allman and Mr. Copas, I'm concerned that we've had three attorneys -- different attorneys involved, Mr. Pellegrin, Mr. Little, Mr. Copas.

I'm also concerned about the length of these cases. We've consolidated two indictments. One was -- one case was arraigned on 8/25/17, three years ago, and then the second one was arraigned 12/15/17, almost three years ago, and then

1  we had a new indictment 3/27/20.  Now, the first two
2  indictments were consolidated.  This last indictment
3  has not been consolidated.  There have been no
4  motions about that.  And one thing I don't think I
5  mentioned to Mr. Copas or Mr. Allman, but are we
6  going to have another jury trial here following
7  these cases.

8          Let the record reflect that I've spent
9  almost two hours with Mr. Copas and Mr. Allman ex
10  parte going over matters that do not need to be made
11  public, getting their take on these motions.
12  Exhibits were introduced, we had a court reporter,
13  and I have ordered a transcript of that proceeding,
14  and everything will be kept under seal.

15          And I will be honest, based on what I
16  have heard from Mr. Allman and Mr. Copas in
17  discussing these matters, I'm not so much concerned
18  about the problem of competing theories between the
19  two, but I'm concerned about allegations that could
20  be made regarding postconviction relief that could
21  taint any convictions.  Now, this encompasses the
22  Sixth Amendment right of the defendant and it's
23  brought some concerns to my attention that I was not
24  aware of, and that's as far as I will go on this
25  particular -- on my comments here based on what I've

```
 1   heard.
 2                So I've spent two hours with the
 3   defense here about their motions.  I want to give
 4   the State of Tennessee every opportunity to let me
 5   hear your position on the motion of hybrid
 6   representation and furloughs and a motion to
 7   withdraw.  Whoever wants to address me, I'll be glad
 8   to hear your argument or your position.
 9                GENERAL BLANTON:  Your Honor, as it
10   pertains to the issue of hybrid representation, the
11   leading case is -- as pointed out in the motion is
12   State vs. Franklin, and quite frankly, Your Honor,
13   in that particular case, it was an extraordinary
14   set of circumstances.  In fact, that's the first
15   statement out of the Supreme Court's memo is -- or
16   their opinion on this case is it was an
17   extraordinary case and should be looked at very
18   carefully.
19                That case sets out factors that a
20   court must determine in order for there to be a
21   hybrid representation, and they are set out, Your
22   Honor -- I'm trying to get the exact page number.
23   The cite of the case is 714 S.W.2d 252, and it --
24                THE COURT:  I've got it, General.
25   I've got it.
```

GENERAL BLANTON:  It goes on to say
that the defendant is not seeking to disrupt the
trial; the defendant has the intelligence, ability,
and general confidence to participate in his own
defense, but the trial court must also ensure -- and
those are the two factors to start with.  And the
Court added the following: that this court must
ensure that the circumstances are so exceptional to
the just- -- to justify the defendant's request,
which circumstances must be made to appear on the
record; the defendant has the opportunity to confer
with counsel out of the presence of the jury prior
to his participation; that, out of the presence of
the jury, the defendant is instructed that he may
not state facts not in evidence; that the defendant
and the jury are instructed that the defendant is
acting as his own counsel and that the defendant is
not giving any evidence or testimony.  Even where
these factors could be present, the trial court may
nevertheless decline to permit a hybrid
representation.

            So it's not an absolute right.  It's
up to the Court to determine these matters.

            And they go on to say that they
believe that only rarely will circumstances justify

the exercise of this discretion.  The defendant has

no absolute right to hybrid representation.

        And in this case, Your Honor, the

State takes the position that there is no absolute

right, there is no reason for hybrid representation,

just doesn't see any of the factors that are

involved here that are necessitated for hybrid

representation.

        As to the request for a furlough, Your

Honor, this Court gave an extraordinary furlough to

Mr. Allman, ten days that he was given outside the

jail to go through the files and discovery and to

meet with his attorney and to prepare his

representation.  That's not afforded to everybody.

In fact, I've not been a part of a case where that

has been allowed.

        And, again, Your Honor, I think that

was an extraordinary situation that the Court

allowed that, and therefore the State would say that

we would be opposed to that.  He's had ample

opportunity.  These are his cases.  He should know

what was done and what wasn't done.  They're his

finances.  They're his bank records.  He should know

what there is and what there isn't, and he's had

over three years to talk to any variety of different

```
 1   attorneys about this, and so we would be opposed to
 2   any furlough.
 3          THE COURT:  Okay.  Mr. Copas, you may
 4   wrap it up here.  Anything you would like to say?
 5          MR. COPAS:  May it please the Court,
 6   we did meet in chambers and everything is under seal
 7   that was discussed there.  I don't want to repeat
 8   anything that was stated in chambers, but the Court
 9   heard my position at that time.
10          THE COURT:  Yes, sir.
11          MR. COPAS:  And there's no need for me
12   to reiterate that --
13          THE COURT:  Okay.
14          MR. COPAS:  -- and I'm going to leave
15   it at that, Your Honor.
16          THE COURT:  Okay.  Thank you.
17          General Blanton kind of set out the
18   law here on Franklin, and I also noted that in
19   Franklin -- I couldn't tell from Burkhart, but in
20   this particular case, Franklin, we're talking about
21   an appointed attorney, and here we have an attorney
22   that's been retained.  I don't know if that makes
23   any difference at all, but that is one thing here
24   and we've got some contractual obligations that
25   exist and have existed that furnish some background
```

```
1    to what I'm thinking about.

2              But the first thing that I want to

3    talk about is judicial determination that the

4    defendant is not seeking to disrupt orderly trial

5    procedure.  I spent a couple of hours with Mr. Copas

6    and Mr. Allman here, and I can tell you one thing, I

7    have expressed my concern to them about a defendant

8    representing himself at a trial, especially of this

9    nature where there are aspects to where an advocate

10   might go over the line of representation when you're

11   talking about representing yourself or putting forth

12   your own defense.  I will state that based on what

13   we have discussed back there, that was not a

14   concern.

15             The concern seemed to be getting this

16   case tried, getting this case tried and getting it

17   in a position to where the Sixth Amendment can be

18   complied with and that the defendant is provided a

19   defense and due process.  I will have to state that

20   I changed my mindset a little bit going from the

21   former to the latter, and there is a great concern

22   with me right now, after talking with the parties of

23   Mr. Allman and Mr. Copas, about the leering

24   possibility of postconviction relief .

25             I find that the defendant here, and
```

1   the record will represent that in the transcript,

2   was not seeking to disrupt orderly trial procedure.

3   He's just trying to get due process and have his day

4   in court.

5           Secondly, that the defendant has the

6   intelligence, ability, and general competence to

7   participate in his own defense.  He's indicated to

8   me that he has 20 years of experience in federal

9   court, and I mentioned to him that none of that was

10  criminal defense work, but the rebuttal to that was

11  that he was dealing with constitutional issues,

12  bringing matters before the court, and that is

13  probably a lot more than any defendant that you

14  could possibly get in these particular

15  circumstances.

16          I will hold Mr. Allman to the

17  requirements of an attorney, and I will not hesitate

18  to jump on him if that limit -- if that line is

19  addressed and I have to deal with it in front of the

20  jury like I've had to do so often in many jury

21  trials, I'll send the jury out and deal with any

22  particular issues where I feel the defendant steps

23  over the line and is not proceeding as a trial

24  should proceed and avoid any personal opinion or

25  right to be correct as opposed to following the

```
 1    rules of trial, rules of evidence, the rules of
 2    criminal procedure.
 3              And I will state after hearing the
 4    discussion between Mr. Allman and Mr. Copas, this
 5    Court has never been involved in anything like this
 6    before, and I'm comfortable that the record that's
 7    been produced from two hours and the evidence that
 8    was introduced will show that the defendant is not
 9    seeking to disrupt an orderly trial procedure, that
10    he has the intelligence, ability, and competence to
11    participate in his own defense.  I will hold fast to
12    the principle that when he argues in his own behalf,
13    he will be limited to fair comment on the evidence.
14    He may not use argument as a guise for an unsworn
15    statement.
16              The public and the State need to know
17    that this is -- there is also a great concern by
18    this Court to get this case tried.  There are
19    numerous people that have been involved in lawsuits
20    and involved as victims in this case who also want
21    their day in court, and I do not want to do anything
22    that is going to obstruct the trial date that we
23    have in eight weeks.  Three years, three attorneys
24    is sufficient enough to move on.
25              I will grant the motion for hybrid
```

representation. I have made you aware, Mr. Allman, that when you cross that line, I'm going to be on it, and if I have to, I'll send the jury out. And there could be a situation where if it keeps on going and it disrupts the orderly trial proceedings, that I'll prohibit you from representing yourself in hybrid representation.

Now -- and, Mr. Copas, if you will do that order.

For now I'm going to deny the motion to withdraw after I've heard and spent two hours with Mr. Allman and Mr. Copas.

Now, addressing the furlough issue, Generals, I've been advised the defense needs a full set of the accounts of Pinnacle Bank, TBS, and possibly other banking institutions. Do we have that? If we don't, how long is it going to take to get it?

GENERAL DEAN: Judge, it's been my understanding that everything has been provided. Many of the things that have been around for years have been provided more than once.

THE COURT: I understand, but we're talking about not just the accounts -- or the information that you want as part of the proof but a

```
 1  full set of the accounts involving Mr. Allman and
 2  various banks.
 3              GENERAL DEAN:  Meaning from the first
 4  time he opened the account until when the account
 5  ended?
 6              THE COURT:  Yes.
 7              GENERAL DEAN:  I would have to talk to
 8  the banks.  I believe we've got three or four banks
 9  involved.  My recollection is he would leave one
10  bank, go to another, leave one bank, go to another,
11  and I believe two of those then we should have
12  everything because it was during this time period,
13  but I'd have to check, Judge.  That's the first time
14  I've heard of any request --
15              THE COURT:  Right.
16              GENERAL DEAN:  -- to do this.
17              THE COURT:  And this was part of the
18  process that I was going through at the very end to
19  find out what is necessary to proceed with this
20  trial.  So, General, if you'll discuss that with
21  Mr. Copas.
22              MR. COPAS:  May it please the Court,
23  one of those articles that he requested -- the
24  defendant requested was the records of the
25  bookkeeper, not the bank.
```

```
1                    THE COURT:  Yes.

2                    MR. COPAS:  So that's very important.

3       That is important, not only --

4                    THE COURT:  L need the records --

5                    MR. COPAS:  I don't have anything like

6       that received.

7                    THE COURT:  The records of the

8       bookkeeper, all the records of the bookkeeper,

9       everything.

10                    GENERAL DEAN:  Judge, are we talking

11      about the bookkeeper for Allman & Associates?

12                    THE COURT:  Yes.

13                    GENERAL DEAN:  Judge, whatever we have

14      from Allman & Associates has been provided and the

15      servers were returned to them.  So they've got all

16      of their stuff that I'm aware of.

17                    THE COURT:  Okay.  This is my order.

18                    Mr. Allman, everything that you think

19      that you need, you discuss with Mr. Copas.

20                    Mr. Copas, you discuss with General

21      Dean, and we will come back into court --

22                    MR. ALLMAN:  Judge, if I may, Your

23      Honor, I had already made a list and I've

24      cross-referenced the list with the TBI inventory --

25                    THE COURT:  Okay.
```

```
 1              MR. ALLMAN:  -- and I'm prepared to
 2   give that to the State so that we can go through
 3   that item by item.
 4              THE COURT:  Okay.  If you'll give that
 5   to the State and let's come back --
 6              MR. ALLMAN:  And, Judge, I did want to
 7   clear the record up.
 8              THE COURT:  Yeah, we'll come back in a
 9   minute.
10              MR. ALLMAN:  Okay.
11              THE COURT:  Okay.  Let's have that
12   taken care of and we'll report back on November 2,
13   8:30 in the morning to see where we stand with those
14   requests.
15              Now, that should get everybody in line
16   with exhibits, documents, evidence to prepare for
17   trial, and I will see what -- any issues that come
18   up at 8:30, November 2.
19              And, General Dean, did you have
20   something you wanted to say?
21              GENERAL DEAN:  I do, Judge.  Let me
22   make sure I understand this correctly.  Everything
23   we have as far as bank records has been provided,
24   sometimes more than once.  What I'm now
25   understanding is that Mr. Allman would like bank
```

```
 1   records that the State does not have.  So you're
 2   asking --
 3                THE COURT:  General, I'm not going to
 4   -- if you don't have it, I'm not going to order it,
 5   okay?
 6                GENERAL DEAN:  Okay.  So I'm not --
 7                THE COURT:  So if you don't have it,
 8   I'm not going to order it.  I just want to go
 9   through this list before trial and knock it off.
10                GENERAL DEAN:  Yes, sir.
11                THE COURT:  You know, I can't hold you
12   accountable for anything that you don't have.
13   That's something they've got to obtain.
14                GENERAL DEAN:  Yes, sir.  Thank you.
15                THE COURT:  Okay.  Now, Mr. Allman, is
16   there something that you wanted to say here?
17                MR. ALLMAN:  Judge, a couple of
18   things.  One, we want to discuss the furloughs to --
19                THE COURT:  Yeah, I'm going to get to
20   that in a minute.
21                     MR. ALLMAN:  Okay.
22                THE COURT:  I haven't gotten there
23   yet.
24                MR. ALLMAN:  Well, as I had mentioned,
25   in reading back through the transcripts, there were
```

some statements about how I had been through so many

attorneys because of a toxic relationship I had with

the attorneys. The two previous attorneys,

Mr. Pellegrin, he had agreed to appear for free

until I could secure counsel for the Sumner County

cases. He was never retained, and he and I had

agreed that he would not be my attorney throughout

the trial. He was just going to appear for the

arraignment. And then he had also been working, I

believe, with General Dean so that I could

voluntarily surrender myself if I were indicted, and

that was it. Mr. Pellegrin will testify that he and

I never had any toxicity in our relationship

whatsoever.

                    THE COURT: Okay.

                    MR. ALLMAN: With Mr. Little, I read

that in the transcript, and I got concerned. When I

hired Mr. Little, our agreement was that he would

handle Sumner County, Davidson County, and the Board

matters for $100,000, and so I signed a note with

him. When I had paid him roughly $80,000, he wanted

another $75,000, and I spent several months trying

to raise that money and I just could not do it. And

Mr. Little said that, well, if you can't pay that,

I'm going to have to withdraw, and so I kept trying

```
1   and I kept saying to Mr. Little, I can't raise that
2   kind of money.  I'm sorry.  I just can't do it.  And
3   he filed the motion to withdraw.
4              THE COURT:  Okay.
5              MR. ALLMAN:  I have text messages, and
6   I have a recording, if Your Honor needs it, that I
7   could file under seal that will substantiate every
8   word I just said.
9              THE COURT:  No.  That's fine.
10             MR. ALLMAN:  So the toxicity was
11  basically he wanted $75,000 more.  I couldn't raise
12  that.
13             THE COURT:  Okay.  Mr. Allman, thank
14  you, sir.
15             MR. ALLMAN:  Sure.
16             THE COURT:  Now, let's talk about
17  furloughs.  Refresh my memory.  Didn't I give one
18  week of a furlough here?
19             MR. ALLMAN:  I got ten days.  I got --
20             GENERAL BLANTON:  It was two weeks,
21  Judge.
22             THE COURT:  Two weeks?
23             MR. ALLMAN:  Five days each.
24             THE COURT:  Okay.
25             GENERAL BLANTON:  From 8:00 o'clock
```

```
 1   in the morning on Monday until 6:00 P.M. on Friday,
 2   two separate weeks back-to-back.
 3              MR. ALLMAN:  I think it was 9:00.
 4              THE COURT:  Okay.  Well, it doesn't
 5   matter.
 6              MR. ALLMAN:  Yeah.
 7              THE COURT:  Mr. Allman, I'm going to
 8   give you one more week, and you can let me know when
 9   you want.  I think the week would be more
10   advantageous to you if you did it sooner rather than
11   later.
12              MR. ALLMAN:  It would, Your Honor, and
13   I would respectfully say that one five-day week --
14   there's no way I can get all this done in one
15   five-day week.
16              GENERAL BLANTON:  And, Judge, I would
17   like to be heard on that as well.
18              THE COURT:  Go ahead, General.
19              GENERAL BLANTON:  We've got a jail
20   full of people who can't make bond or had their bond
21   revoked who would love to have a furlough for
22   preparation for their trial, and if this is going to
23   be a habit, I'm afraid --
24              THE COURT:  No, sir.  It's not going
25   to be a habit.  I'm just looking at the case,
```

General, and I haven't ever had a case like this
before me that requires what I've had to go through
today along with all the evidence that's supposed to
be out there. It's definitely not going to be a
habit, but I don't want to try this case twice.

GENERAL BLANTON: I understand, Judge,
but Mr. Allman has been a part of it and he's had
this information for the last three years. I don't
understand why all of a sudden we need these weeks
to prepare. He's had three years.

THE COURT: Mr. Allman, do you want to
tell us what the pressing need is?

MR. ALLMAN: Well, Judge, at this
point I'm now taking on a new role. Not only am I
just a defendant, but now I'm going to be actively
participating in the trial. So I'll actually be
preparing as a lawyer for a trial.

Now, Mr. Blanton, the General, talks
about other individuals who are back in the jail and
they don't -- they can't make bond, but they're not
participating in their cases as a lawyer.

Now, Your Honor -- and I know Your
Honor has tried hundreds and hundreds of cases and
Your Honor realizes the size, the complexity, the
volume of financial records and witnesses that we're

dealing with. We've got potentially 50 witnesses

that Mr. Copas and I have to prepare for. There's

no way I can do that in one week. There's --

THE COURT: Well, the problem is, like

the General says, you know, we've had three years,

and I'm doing the best I can to take what's before

me and not -- the case now is not on your shoulders

-- or your shoulders alone. I will be glad to give

you one week, and that's all I can give you, so that

you can get those things that you need and bring

them to the jail, or we'll make whatever

arrangements are necessary at the jail. But, golly,

I could move all my stuff in my house and my

brother's house and his children's house in one

week. So pick the week that you want, Mr. Allman.

Let's see, we've got -- what have we

got? We've got the 12th of October, we've got the

19th of October, we've got the 26th of October,

the 2nd of November, the 9th of November, and the

16th and the 23rd. The 23rd you're getting into the

holidays there. So I would suggest either the first

three weeks -- one of the first three weeks or one

of the last three weeks of this month.

MR. ALLMAN: Judge, I would choose

October the 26th.

```
 1              THE COURT:  Very good.

 2              MR. ALLMAN:  I would respectfully

 3    request that on November the 2nd that you hear my

 4    request for an additional five days before the

 5    trial.  Just to have an open mind is all I'm asking,

 6    Your Honor.

 7              THE COURT:  I'll be glad to have an

 8    open mind.  I'm not inclined to grant it, but I will

 9    check with everybody here, and we'll come back on

10    November 2nd, 8:30 in the morning not only to review

11    documents that might be needed and to hear any

12    additional request for more time.

13              Mr. Copas, if you will make an order

14    covering everything that we have discussed.

15              I have been talking to Ms. Strong

16    today about the jury trial, and I think probably

17    what we're going to do, we're going to bring in 40

18    jurors at 9:00 o'clock and then another 40 jurors at

19    11:00 o'clock, just depending on how it goes.  The

20    COVID cases that we've had, we've had three jury

21    trials in -- I think it was in July, and we didn't

22    have any issues at all.  We'll just have to see how

23    that goes.

24              Do we anticipate motions now?

25    Motions?  Mr. Copas?
```

1          MR. COPAS:  Your Honor, I will file
2    motions -- in limine motions.  I've been in the
3    process of trying to get that done and that's very
4    critical in my theory of --
5              THE COURT:  Sure.
6          MR. COPAS:  -- a defense in this case.
7              THE COURT:  General Dean, what about
8    motions from the State?
9              GENERAL DEAN:  Judge, I've thought of
10   maybe one.
11             GENERAL BLANTON:  There may be another
12   404(b) motion filed, Judge.
13             THE COURT:  Okay.  What we'll do then
14   is you-all file these motions as soon as possible.
15   I will not be able to take up the motions the way it
16   exists now on the 2nd, but I'll find another day to
17   docket those motions and make you aware in advance
18   of the trial.
19             MR. COPAS:  Your Honor, I want to make
20   sure I can define this.  Statements that Mr. Allman
21   can make during the trial, it can be -- only can be
22   arguments on the admitted evidence?
23             THE COURT:  Yes, sir.
24             MR. COPAS:  Anything other than that
25   cannot be heard?

1          THE COURT:  Nothing.  Yeah, nothing
2     that's not in evidence can be referred to.  You
3     can't talk about your personal opinions, you can't
4     talk about things that you did outside the scope of
5     the evidence.
6          You know, I don't know if you're going
7     to testify, Mr. Allman, but that's another matter
8     that we'll have to go through.  But, you know, it's
9     pretty basic there.  You're an attorney and you'll
10    be held to an attorney's standards.
11         MR. ALLMAN:  Yes, Your Honor.
12         MR. COPAS:  He will have to give
13    testimony, Your Honor.  I can't see anything to get
14    around that, so ...
15         THE COURT:  That will be interesting.
16         Anything else?  General.
17         GENERAL DEAN:  Judge, I just wanted to
18    double-check that the furlough will be subject to
19    the same restrictions --
20         THE COURT:  Yes, sir.
21         GENERAL DEAN: -- of the previous
22    furlough?
23         THE COURT:  Yes, sir.  We'll do the
24    same exact thing.
25         MR. ALLMAN:  Judge, if I may speak to

```
 1    that.  I'm going to have to have some help making
 2    copies of exhibits, putting notebooks together.  I
 3    mean, is there any way that my wife can be there to
 4    assist me to get all this stuff done?
 5              THE COURT:  I will allow your wife to
 6    assist you in any work product that you need.
 7              MR. ALLMAN:  Thank you, Your Honor.
 8              THE COURT:  Put that in the order.
 9              MR. ALLMAN:  And, Your Honor, I had a
10    couple of trial logistic questions.
11              THE COURT:  Yes, sir.
12              MR. ALLMAN:  I didn't --
13              THE COURT:  If you could pull your --
14              MR. ALLMAN:  I'm sorry.
15              THE COURT:  It's okay.
16              MR. ALLMAN:  You know, we're not
17    required to wear those in there.
18              THE COURT:  I know.  I know.
19              MR. ALLMAN:  I didn't know if the
20    State had any guess as to when it would finish its
21    proof.
22              THE COURT:  I -- you're talking about
23    50 witnesses.
24              MR. ALLMAN:  Yeah.
25              THE COURT:  Well, I have no idea.  I
```

```
 1   would say at least a week.  Do y'all agree?
 2              GENERAL DEAN:  Oh, yes.
 3              THE COURT:  At least a week.
 4              MR. ALLMAN:  Okay.  Well, that's
 5   quicker than I thought, so ...
 6              GENERAL BLANTON:  Oh, it will be
 7   longer than that.
 8              MR. ALLMAN:  I'm thinking two weeks.
 9              GENERAL BLANTON:  At the minimum it
10   will be a week, Judge.
11              THE COURT:  Okay.
12              GENERAL BLANTON:  I mean, we've
13   noticed at least two expert witnesses as to bank
14   records and that type of stuff.  So I would
15   anticipate the experts' cross-examination will be a
16   while as well as will the State's proof regarding
17   those, in addition to all the bank personnel, the
18   witnesses that will be testifying as well.  It very
19   well will go into the second week.  I can't see any
20   way possible --
21              THE COURT:  I'd say a week at the
22   least.  And I don't know how many witnesses the
23   defense will have, but you compute that into the
24   length.
25              Next question.
```

```
1              MR. ALLMAN:  And then under 24(f), is

2    Your Honor a single or separate entity jury

3    selection for alternates?

4         .         THE COURT:  What we do is I pick.

5    alternate jurors -- is that what you're talking

6    about?

7              MR. ALLMAN:  Yes, Your Honor.

8              THE COURT:  I pick alternate jurors as

9    alternates, the old fashioned way.

10             MR. ALLMAN:  So separately?

11             THE COURT:  Separately.

12             MR. ALLMAN:  All right.  And then when

13   would we might be able to get the jury information,

14   list of prospective jurors?

15             THE COURT:  Hold on just a second.  We

16   have a list of prospective jurors after they're

17   impaneled.

18             And, Ms. Paige, when would that be if

19   we're trying this case -- when we're trying it?

20   When would the list of jurors be available?

21             ' GENERAL BLANTON:  Judge, it's usually

22   the Monday before the end of the month which would

23   be the Monday before we start trial.

24             THE COURT:  Hold on.  I think these

25   people will probably be impaneled for November.
```

```
 1              GENERAL BLANTON:  I would think they
 2     would be December because they start November 30th
 3     and go through December the --
 4                     THE CLERK:  I would think, Judge, that
 5     this might be December's jury.
 6                THE COURT:  That'll be fine.  And, you
 7     know, I could be wrong.  I'll tell you --
 8                THE CLERK:  That is something I can
 9     find out by 11/2.
10                THE COURT:  Okay.  Yeah, if it's
11     available on the second of November, we'll have it.
12     Otherwise I'll let you know by the 2nd.
13                MR. ALLMAN:  Okay.  And I've given the
14     General the list of the missing documents.
15                THE COURT:  Okay.  Good.
16                MR. ALLMAN:  I understand -- so the
17     voir dire panel -- I see the blue tape.  So I'm
18     assuming the voir dire panel is going to be back
19     here?
20                THE COURT:  The voir dire panel will
21     probably cover the entire courtroom, and what we'll
22     do is when we are ready, I'm going to have voir dire
23     probably -- what I've been doing is we'll cover a
24     lot of the questions and we'll eliminate some for
25     cause and then we'll bring up -- I'm going to bring
```

```
 1   up 15.  So we'll do it 15 at a time.

 2                MR. ALLMAN:  Now, will the jury still

 3   be in the jury box for the trial?

 4                THE COURT:  Do you mean for -- what do

 5   you mean "for the trial"?

 6                MR. ALLMAN:  Well, for the actual

 7   trial.  Not for voir dire, but when the trial

 8   actually starts --

 9                THE COURT:  Do you see the way the

10   seats are arranged now?  You've got some out front,

11   you've got one on the side and one over here and

12   you'll have two on the front row.  The seats that

13   are marked with blue tape will be where jurors sit

14   and then we'll have one on the side.  You have four

15   out front and two over here and two back there --

16   three back there, because we'll have 15 -- we'll

17   have 15.

18                MR. ALLMAN:  Okay.  And then, Your

19   Honor, I was going to talk to the State to see if we

20   could stipulate to court pleadings and

21   administrative agency documents that obviously have

22   the seal from the administrative agency, just

23   stipulate to those as being authentic.

24                THE COURT:  Whatever y'all work out --

25                MR. COPAS:  Your Honor, I'm --
```

```
 1              GENERAL BLANTON:  It was -- there's a
 2   reciprocal discovery out there.  We haven't gotten
 3   anything in discovery from the defense.  So if
 4   there's something out there that they plan to
 5   introduce from the discovery, it's about time that
 6   they get it to us.
 7              THE COURT:  Yeah.  I'm going to order
 8   that reciprocal discovery --
 9              Mr. Copas, if you will put this in the
10   order.
11              MR. COPAS:  Your Honor, I'm not going
12   to stipulate to anything before --
13              THE COURT:  I understand.  I'm going
14   to order reciprocal discovery here by October 20th.
15              MR. ALLMAN:  And, Your Honor, I'm
16   solely talking about documents that are on the
17   network server of which the State has a copy.
18              THE COURT:  Sure.  That's just
19   something for you-all to talk about.
20              MR. ALLMAN:  Okay.
21              THE COURT:  I would think, Mr. Allman,
22   that these matters would be better accomplished
23   through Mr. Copas rather than you, the defendant,
24   directly talking to the district attorney.
25              MR. ALLMAN:  Right.
```

```
1              THE COURT:  Anything else?  All right.

2     That will be the order of the Court.

3              MR. COPAS:  Thank you, Your Honor.

4              MR. ALLMAN:  Thank you, Your Honor.

5              THE COURT:  Yes, sir.

6        END OF REQUESTED TRANSCRIPT OF PROCEEDINGS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    REPORTER'S CERTIFICATE
 2              I, Lori C. Bice, Licensed Court Reporter
 3      for the State of Tennessee, hereby certify that I
 4      reported the foregoing proceedings at the time and
 5      place set forth in the caption thereof; that the
 6      proceedings were stenographically reported by me;
 7      and that the foregoing proceedings constitute a true
 8      and correct transcript of said proceedings to the
 9      best of my ability.
10              I FURTHER CERTIFY that I am not related to
11      any of the parties named herein, nor their counsel,
12      and have no interest, financial or otherwise, in the
13      outcome or events of this action.
14              IN WITNESS WHEREOF, I have hereunto
15      affixed my official signature this 22nd day of
16      February, 2021.
17
18
19
20
21         '              '              '              '              '
                             _____
22                           LORI C. BICE, LCR
                             STATE OF TENNESSEE
23                           LCR No. 036, Expires 6/30/2022
24
25
```