UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| ANDY L. ALLMAN, | ) |   |
|---|---|---|
|   | ) |   |
| Petitioner, | ) |   |
|   | ) | No. 3:21-cv-00267 |
| v. | ) | Judge Trauger |
|   | ) |   |
| SONNY WEATHERFORD, | ) |   |
|   | ) |   |
| Respondent. | ) |   |

## MEMORANDUM AND ORDER

Andy L. Allman, a pretrial detainee at the Sumner County Jail in Gallatin, Tennessee, filed a pro se amended petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. No. 7.) The petitioner also filed a motion for release pending disposition of the petition (Doc. No. 23), to which the respondent submitted a response (Doc. No. 26), and the petitioner filed a reply (Doc. No. 29). Pursuant to court order, the parties submitted argument regarding exhaustion of state remedies. (Doc. Nos. 8, 12, 28, 31.) In addition, the respondent filed a motion to dismiss the amended petition (Doc. No. 21), to which the petitioner responded (Doc. No. 24), and the respondent filed a reply (Doc. No. 27). Accordingly, the amended petition is again before the court for preliminary review. *See* Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") (providing that a court must "promptly examine" and dismiss a habeas petition if it "plainly appears" that "the petitioner is not entitled to relief"); Habeas Rule 1(b) (allowing application of Habeas Rules to any habeas petition). For the following reasons, the court will dismiss the amended petition without prejudice.

**I.     Background**

On September 9, 2016, the Tennessee Supreme Court suspended the petitioner from the practice of law in response to complaints from the public. (Doc. No. 26-1.) On August 10, 2017, the petitioner was indicted on 28 counts of theft by deception, falsely holding himself out as an attorney, and unlicensed practice of law.[1] (Doc. No. 1-6.) On December 6, 2017, the petitioner was indicted on 11 additional counts of theft by deception and falsely holding himself out as an attorney.[2] (*Id.*) The trial court released the petitioner on a $25,000 bond. (Doc. No. 26-5.) In 2018, the Tennessee Supreme Court disbarred the petitioner three different times. (*See* Doc. Nos. 26-2, 26-3, 26-4.) On March 26, 2019, the petitioner retained counsel Gary Copas. (Doc. No. 1-13.)

On March 5, 2020, the petitioner was indicted on two additional counts of falsely holding himself out as an attorney and theft by deception.[3] (Doc. No. 26-6.) The trial court set the petitioner's bail at $2.5 million and held a two-day bond revocation hearing. (Doc. Nos. 26-7, 26-8.) During the hearing, the trial court found by a preponderance of the evidence that the petitioner had committed two crimes while released on bond. (Doc. No. 26-8 at 13-14.) In addition, the trial court found that these events were part of an ongoing campaign of unauthorized law practice that had caused "damage" and "destruction" so "overwhelming" that it could be analogized to "Sherman going through Georgia." (*Id.* at 4-13.) The trial court concluded that the petitioner's decision to "continue[ ] his deceptive practices and fraud" while released on bond went "straight to the heart of the safety of the public from attorneys that might possibly be criminals," and that

---

[1] *See* Case No. 2017-CR-548 (Sumner Cnty. Crim. Ct.).

[2] *See* Case No. 2017-CR-875 (Sumner Cnty. Crim. Ct.).

[3] *See* Case No. 2020-CR-133 (Sumner Cnty. Crim. Ct.).

2

the petitioner was, therefore, a "danger to the public if [he is] out."[4] (*Id*. at 13-15.) Accordingly, the trial court revoked the petitioner's bond until trial.[5] (*Id*. at 15; Doc. No. 1-4.)

On October 5, 2020, the trial court held a hearing on the petitioner's motion for "hybrid representation." (Doc. No. 2.) The "core issue" was the petitioner's desire to provide assistance to counsel in "prepar[ing] for" and "adequately defend[ing]" the petitioner at trial. (Doc. No. 12 at 4-5.) In particular, the petitioner was dissatisfied with the length of the furlough that he had been granted to prepare for trial. (*See* Doc. Nos. 2; 7 at 4-5.) After extensive discussion, the trial court granted permission for the petitioner to provide heightened assistance to counsel in the presentation of his defense at trial. (*See* Doc. No. 2 at 10-13; Doc. No. 1-2 at 19-20.) The trial court noted that pretrial matters were to be handled "through Mr. Copas, rather than you, the defendant." (Doc. No. 2 at 32.) The petitioner acknowledged that his "new role" under hybrid representation would be that of a defendant actively "preparing for" and "participating in" a trial. (*Id*. at 22.) In response to the state's request for reconsideration, the petitioner likewise characterized his role as "sharing in the workload" and assisting counsel "at the trial" by "making arguments, examining and cross-examining witnesses." (Doc. No. 1-2 at 27-28.)

On December 15, 2020, the petitioner filed a pro se, 332-page document entitled "Motion to Review, Set Aside Order of Revocation and for Release to House Arrest and it's attached exhibits." (Doc. No. 1-3.) On December 18, 2020, the trial court summarily denied the motion "because the Defendant has been disbarred, because the Defendant can only assist his attorney at trial, and because the Court does not allow pleadings to be filed by defendants when represented by an attorney." (Doc. No. 1-7 at 3.) The trial court highlighted that "hybrid representation makes

---

[4] The trial court also noted that it "did not know what's going on" with the petitioner, in part because he was "every second looking to correct his attorney." (Doc. No. 26-8 at 10.)

[5] Trial is set for a November 1, 2021. (Doc. No. 1-1.)

no allowance for the Defendant to file **ANY** motions or pleadings before th[e] Court," but rather "only concerns the assistance of the Defendant at a jury trial." (*Id*. at 2) (emphasis in original). Finally, the trial court reminded the petitioner that he could not obtain "consider[ation of] any motion . . . when his[ ] cases are pending[ ] and [he is] represented by an attorney." (*Id*. at 3.)

Undaunted, the petitioner filed a pro se, 45-page Motion to Review with the Tennessee Court of Criminal Appeals ("TCCA"). (Doc. No. 1-8.) On March 17, 2021, the TCCA denied the motion without consideration.[6] (Doc. No. 1-7 at 4-6.) The TCCA reiterated that the petitioner had no right to engage in motion practice while represented by counsel, and it noted that the petitioner had no right, in any event, to any hybrid representation before the TCCA. (*Id*.) Because the petitioner had filed a motion while "still represented by counsel," the TCCA concluded that there was "nothing to review." (*Id*. at 5-6.) However, the TCCA instructed the petitioner that he could obtain review by having counsel file an appropriate motion. (*Id*. at 6.)

On March 31, 2021, the petitioner filed a federal habeas petition under Section 2241. (Doc. No. 1.) On April 8, 2021, the petitioner filed an amended petition asserting that his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights have been violated. (Doc. No. 7.) More specifically, the amended petition claims that: (1) the state withheld both material and exculpatory evidence at the bond revocation hearing; (2) the state introduced improper evidence at the bond revocation hearing; (3) the state did not meet its evidentiary burden at the bond revocation hearing; (4) pretrial detention violates the petitioner's right to prepare for trial and to have a fair trial; (5) the state courts' definition of hybrid representation violates the petitioner's right to represent himself, hinders the petitioner's defense, and denies the petitioner access to the courts; and (6) the

---

[6] *See State of Tennessee v. Allman*, No. M2021-00196-CCA-R8-CO (Tenn. Crim. App. Mar. 17, 2021).

petitioner's bail is excessive, and less restrictive conditions are sufficient. (*Id*. at 9-11.) The amended petition seeks immediate release under less restrictive conditions. (*Id*. at 54-55.)

## III. Analysis

Under Habeas Rule 4, the court must dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *See also Crump v. Lafler*, 657 F.3d 393, 396 n.2 (6th Cir. 2011) (citing *McFarland v. Scott*, 512 U.S. 849, 856 (1994)) ("If the court determines that the petitioner is not entitled to relief, the court shall summarily dismiss the petition."). Indeed, "district courts have a 'duty to screen out [habeas petitions that] should be dismissed,'" including "for lack of exhaustion." *Shah v. Quintana*, No. 17-5053, 2017 WL 7000265, at *2 (6th Cir. July 17, 2017) (quoting *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970)).

### A. Exhaustion of State Remedies

State pretrial detainees may pursue habeas corpus relief under Section 2241 under certain limited circumstances, *Christian v. Wellington*, 739 F.3d 294, 297 (6th Cir. 2014), including vindicating the right to "protection against unreasonable bail pending trial." *Atkins v. People of State of Mich*, 644 F.2d 543, 549 (6th Cir. 1981) (citation omitted); *MPawinayo v. Hall*, No. 3:20-cv-01097, 2021 WL 1984944, at *1-2 (M.D. Tenn. May 18, 2021). However, before presenting Section 2241 claims for federal review, a petitioner "must exhaust all available state court remedies."[7] *Phillips v. Ct. of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 809 (6th Cir. 2012); *see also MPawinayo*, 2021 WL 1984944, at *2 (quoting *Atkins*, 644 F.2d at 549-50) (explaining that mandatory exhaustion "avoids concerns militating against piecemeal appeal or

---

[7] Unlike exhaustion under 28 U.S.C. § 2254, exhaustion under Section 2241 is not a statutory requirement. *Compare* 28 U.S.C. § 2254 *with id*. § 2241. Rather, in the Section 2241 context, "decisional law has superimposed such a requirement in order to accommodate principles of federalism." *Phillips*, 668 F.3d at 811 n. 4 (citations omitted).

federal interference in state criminal proceedings"). Even a claim of excessive bail, which "must be defended immediately if it is to be protected at all," is subject to the mandatory exhaustion rule.[8] *Atkins*, 644 F.2d at 549-50; *see also, e.g., Hairston v. Franklin Cnty. Ct. of Common Pleas*, No. 2:17-cv-00353, 2017 WL 2628236, at *2 (S.D. Ohio June 16, 2017), *report and recommendation adopted*, No. 2:17-cv-00353, 2017 WL 2972151 (S.D. Ohio July 12, 2017) ("[E]ven though a state petitioner who alleges excessive bail is not required to wait for a final judgment on the merits in state court, he must still exhaust all of his state court remedies before federal habeas intervention is warranted.").

To fulfill the exhaustion requirement, a habeas petitioner must offer the state courts "an opportunity to confront the issue[s]," *Atkins*, 644 F.2d at 549, by fairly presenting "every claim in the federal petition to each level of the state courts, including the highest state court to which the petitioner is entitled to appeal." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)); *Phillips*, 668 F.3d at 809-10; *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)) (explaining that a federal habeas petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim). In Tennessee, a petitioner may satisfy the exhaustion requirement by raising the factual and legal basis of each claim to the TCCA.[9] *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003) (citing

---

[8] The only regularly recognized exceptions to the complete-exhaustion rule for Section 2241 petitions brought by pretrial detainees are for claims that a prosecution violates the Double Jeopardy Clause or where a petitioner claims that his right to a speedy trial has been violated and the requested relief is an immediate trial. *See Smith v. Hall*, No. 3:12-cv-1022, 2013 WL 587479, at *2 n.2 (M.D. Tenn. Feb. 13, 2013) (citing *Phillips*, 668 F.3d at 810-11; *Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484 (1973); *Atkins*, 644 F.2d at 546-47). Neither circumstance is present here.

[9] For this reason, the court does not consider the respondent's persistent argument that the amended petition is unexhausted because the petitioner failed to take a permissive appeal of the TCCA's summary dismissal to the Tennessee Supreme Court. (*See, e.g.*, Doc. Nos. 26 at 6-7; 27 at 4.)

6

Tenn. Sup. Ct. R. 39). The petitioner must then present to a federal court essentially the same facts and legal theories that were considered and rejected by the state courts. *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). The burden is on the petitioner to demonstrate compliance with the exhaustion requirement or that the available state procedure would be futile. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

The petitioner has not demonstrated compliance with the mandatory exhaustion requirement. The record reflects that petitioner is actively represented by retained counsel. The trial court granted the petitioner permission to assist counsel in preparing for trial and conducting a defense at trial. The petitioner has not established that the trial court granted – or even contemplated granting – permission for the petitioner to engage in unfettered pro se motion practice while represented by counsel. To the extent that the petitioner may have been laboring under such a misunderstanding, however, the trial court made *crystal clear* when it denied the motion for review that the petitioner was not permitted to engage in pro se motion practice while represented by counsel. Rather than challenge that ruling, address the performance of counsel, or seek other leave from the state courts, however, the petitioner inexplicably submitted another pro se motion to review. By submitting unauthorized motions subject to summary dismissal, the petitioner failed to offer the Tennessee courts a fair opportunity to apply controlling legal principles to the facts bearing upon the petitioner's claims.[10] Indeed, due to the petitioner's insistent course of action, the claims in the amended petition have yet to be argued before any court.

---

[10] This is plainly not a circumstance – as the petitioner suggests – in which claims were properly presented to the state courts, and, after taking up the merits, the state courts did not rule on one or more of the claims. *See, e.g.*, *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990); *Harris v. Rees*, 794 F.2d 1168, 1174 (6th Cir. 1986).

7

The petitioner's arguments for excusing the exhaustion requirement are wholly unpersuasive. First, the petitioner contends that counsel cannot or will not file the motions to review because the retainer agreement allows counsel to represent the petitioner "in trial court proceedings only." (Doc. No. 7 at 6-7.) This is unsupported by the plain language of the retainer agreement, which specifies that counsel shall represent the petitioner concerning "all rights, constitutional and statutory, federal and state" until "judgment being entered pursuant to a plea agreement, a dismissal, or an appealable judgment under Rule 3(b) of the Tennessee Rules of Appellate Procedure." (Doc. No. 1-13 at 1.) None of these conditions has occurred, notwithstanding the petitioner's repeated use of the word "appeal."[11] The petitioner has offered no credible ground to exclude litigation of pretrial detention issues from the scope of trial counsel's representation. *See also* Tenn. R. App. P. 8(a) (specifying that challenges to bond conditions must be brought in the trial court). Furthermore, the petitioner has made no attempt to justify the proposition that a private retainer agreement, however interpreted, may supersede well-established rules governing representation and motion practice in the Tennessee courts. *See, e.g.*, *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980) ("The rules governing practice and procedure in the trial and appellate courts of Tennessee . . . have the force and effect of law.").

The petitioner also contends that counsel cannot or will not file the motions to review due to flagging performance. (Doc. No. 12 at 4.) However, the petitioner has not sufficiently established that counsel – whom the petitioner continues to retain without formal complaint – refuses to perform. For example, the petitioner attaches a number of communications asking counsel to perform tasks, but he omits corresponding refusals. (*See* Doc. Nos. 12-3; 30.) Nevertheless, to the extent that the petitioner broadly invokes the spectre of ineffective assistance

---

[11] Thus, the boilerplate provision in the retainer agreement requiring a "separate agreement" for post-judgment appeals is of no moment. (*See* Doc. No. 1-13.)

8

of counsel, "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim" before it may be used to excuse a failure to exhaust or procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)); *see also Lovins v. Parker*, 712 F.3d 283 (6th Cir. 2013) (explaining that the exhaustion and procedural default rules share the purpose of allowing state courts the opportunity to address federal claims "in the first instance"). Here, the record does not indicate that the petitioner raised with the state courts his counsel's specific unwillingness to file the motions to review. Because state remedies are still available and the petitioner may address counsel's willingness to pursue those remedies, the petitioner may not use the mere suggestion of ineffective assistance of counsel to elude the exhaustion requirement.

The petitioner also makes numerous arguments concerning hybrid representation, including: the scope of the petitioner's hybrid representation is, alternatively, too vague or more sweeping than allowed by the state courts; the state courts improperly restricted the petitioner from filing uncounseled motions; the state courts deliberately prevented the petitioner from seeking redress through the courts; the state courts fundamentally misunderstand the Sixth Amendment, other constitutional law, and hybrid representation; there is no record evidence that the petitioner's role was to be limited or that the petitioner was not to engage in uncounseled motion practice; and arguments in favor of a restrictive view of hybrid representation are "blatantly false" and "inanity." (Doc. Nos. 31 at 1; 12 at 9-13.) These contentions go largely to the merits of the petitioner's habeas claims and do not provide a basis to excuse the mandatory exhaustion requirement. Thus, the court need only observe that the petitioner has not offered authority for the proposition that discretionary hybrid representation must allow unfettered pro se motion practice by a represented criminal defendant. *See State v. Franklin*, 714 S.W.2d 252, 258-59 (Tenn. 1986) (citing *McKaskle v.*

*Wiggins*, 465 U.S. 168 (1984)) (a Tennessee criminal defendant ordinarily must elect to act pro se or to accept representation by counsel). Furthermore, because the petitioner remains free to file a counseled motion for review or seek other relief from the state courts, the petitioner has not established that hybrid representation is unduly restricting his access to the courts.

Accordingly, the court concludes that the petitioner has not met his burden of demonstrating the exhaustion of state remedies regarding any claim in the petition. *Phillips*, 668 F.3d at 809. Moreover, the petitioner has also failed to demonstrate that available state procedures are futile. *Rust*, 17 F.3d at 160. Put succinctly, the principles of federalism and comity require much more from the petitioner before this court may consider disruptive intervention in an ongoing state criminal proceeding. *See Atkins*, 644 F.2d at 546 (emphasizing that exhaustion, rooted in the doctrine of comity and principles of federalism, limits intrusion by federal courts in state proceedings to "extraordinary circumstances"). Because the petitioner has unexhausted state remedies available to him, the court must dismiss the amended petition.

### B. *Younger* Abstention

Even if the petitioner had exhausted state remedies, the *Younger* abstention doctrine would require the court to abstain from considering the majority of the petitioner's claims. *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine requires a federal court to abstain, absent extraordinary circumstances, from interfering with pending state proceedings to address issues involving important state interests. *Id*. at 44; *see also Smith*, 2013 WL 587479, at *3 (highlighting that *Younger* applies to habeas corpus petitions). *Younger* abstention applies when three requirements are met: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457

U.S. 423, 432 (1982); *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir. 1989); *see also Atkins*, 644 F.2d at 546 (explaining that abstention is appropriate when a claim "may be resolved either by trial on the merits in the state courts or by other procedures available to the petitioner"). When the *Younger* factors are met, a federal court must abstain unless a petitioner shows that "state law bar[s] presentation of his or her constitutional claims" or one of the limited exceptions to *Younger* applies. *Danner v. Bd. of Pro. Resp. of Tenn. S. Ct.*, 277 F. App'x 575, 579 (6th Cir. 2008) (citing *Fieger v. Thomas*, 74 F.3d 740, 746 (6th Cir. 1996)).

Here, if properly exhausted, the petitioner's excessive bail claim could proceed in federal court under Section 2241. *See Atkins*, 644 F.2d at 549; *MPawinayo*, 2021 WL 1984944, at *1-2 & n. 1. However, all of the remaining claims that concern violations of the petitioner's constitutional trial rights are squarely subject to the *Younger* abstention doctrine. First, the petitioner is involved in an ongoing state criminal proceeding. Second, that criminal proceeding implicates Tennessee's important interests in regulating the legal profession and adjudicating allegedly pervasive criminal conduct by a former licensed attorney. *See, e.g., Danner*, 277 F. App'x at 579 (quoting *Goldfarb v. Va. St. Bar*, 421 U.S. 773, 792 (1975)) ("[T]he regulation of lawyers is of especially great interest to the state, as lawyers are essential to the primary governmental function of administering justice and have historically been officers of the courts."). Third, because the petitioner still has an adequate opportunity to raise these claims, he has failed to "prove the inadequacy of the state courts." *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995).

Moreover, the petitioner has not demonstrated that any exception to *Younger* abstention would be applicable. First, as discussed above, there is no indication that state law bars the proper presentation of the petitioner's constitutional claims. *Danner*, 277 F. App'x at 579. Second, there is no record evidence that "the state proceeding is motivated by a desire to harass or is conducted

11

in bad faith." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). Third, the petitioner does not allege that a state statute under which he is being prosecuted is patently unconstitutional. *Moore v. Sims*, 442 U.S. 415, 424 (1979). Finally, the amended petition does not sufficiently allege "great and immediate" irreparable injury in the absence of federal intervention. *Younger*, 401 U.S. at 45; *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). Thus, under *Younger*, the court would be required to abstain from exercising jurisdiction over the majority of the petitioner's claims.

### III. Conclusion

For these reasons, a preliminary review of the amended petition reflects that the petitioner failed to exhaust available state court remedies regarding all habeas claims. It is equally evident that the petitioner controls his own circumstances, and state review remains available should the petitioner choose to pursue it using the appropriate procedures. Furthermore, the court would, in any event, be required to abstain from considering most of the petitioner's claims during the pending state criminal proceedings. Accordingly, the amended petition (Doc. No. 7) is **DIMISSED WITHOUT PREJUDICE**. The petitioner's motion for release pending disposition of the petition (Doc. No. 23) and the respondent's motion to dismiss (Doc. No. 21) are **DENIED AS MOOT**.

Because this constitutes a final order adverse to the petitioner, the court must issue or deny a certificate of appealability. Habeas Rule 11(a). A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a habeas petition is "denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court concludes that the petitioner has not satisfied this standard, and therefore **DENIES** a certificate of appealability. The petitioner may, however, seek a certificate of appealability directly from the Court of Appeals for the Sixth Circuit. Fed. R. App. P. 22(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge